Christopher J. Reichman  SBN 250485
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
Email: chrisr@prato-reichman.com

Attorney for Plaintiff
PAUL SAPAN

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN,<br><br>        Plaintiff,<br><br>   vs.<br><br>AMERICAN CAPITAL REVITALIZATION GROUP, LLC, a California Limited Liability Company, DANA FABIAN, an individual,<br><br>      Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES, INCLUDING PUNITIVE DAMAGES, INTEREST AND ATTORNEY'S FEES, AND FOR INJUNCTIVE RELIEF**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991 Trespass to Chattel Unfair Business Practices** |

COMES NOW Plaintiff PAUL SAPAN (hereinafter referred to as "Plaintiff") who alleges as follows:

## <u>JURISDICTIONAL ALLEGATIONS</u>

1.       Plaintiff at all times herein mentioned was, a resident of the County of Los Angeles, but has recently moved to the County of Orange, State of California.

2.       Defendant AMERICAN CAPITAL REVITALIZATION GROUP, LLC ("AMERICAN CAPITAL") is, and at all times herein mentioned was, a California corporation, doing business in the County of Los Angeles, State of California.

3.       Defendant DANA FABIAN ("FABIAN") is, and at all times herein mentioned was an individual doing business in the County of Los Angeles, State of California.

4.       AMERICAN CAPITAL and FABIAN are collectively referred to herein as "Defendants".

5.       This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq.  The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441.  *Mims v. Arrow Fin. Services, LLC*, --U.S. --, 132 S.Ct. 740, 753 (2012).  The state law claim herein arises out of a common nucleus of operative facts and is subject to supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

6.     At all times herein mentioned each defendant was the partner, agent and employee of each co-defendant herein and was at all times acting within the scope of such partnership, agency and employment and each defendant ratified the conduct of each co-defendant herein.

## **FACTUAL SUMMARY**

7.     Defendants made four (4) prerecorded calls and three (3) live calls to SAPAN's  wireless phone number (510-333-7473) wherein they tried to pitch their mortgage and credit consultancy services on the following dates and times and using the following Caller ID ("CID") number:

- 01/07/2015 at 12:00 PM;CID 424-218-1149 (Prerecorded)
- 01/08/2015 at 2:41PM; CID 424-218-1149; (Prerecorded)
- 01/13/2015 at 12:13 PM; CID 424-218-1149; (Prerecorded)
- 01/13/2015 at 12:16 PM; CID 424-253-9395   (Live)
- 03/03/2015 12:05 PM; CID 424-221-5551 (Prerecorded)
- 03/03/15 12:08 PM; CID 424-281-3979 (Live)
- 03/12/2015 11:17 AM; CID 424-281-3979 (Live)

8.     Mr. Sapan's wireless phone number has been listed on the federal "Do Not Call" registry maintained by the Federal Trade Commission from at least January 1, 2015 to present.

9.      While each of the calls complained of above used the same Caller ID number, none of them transmitted any Caller ID name information as required by law.  47 C.F.R. § 64.1601(e).  Plaintiff alleges on information and belief that the name was omitted specifically to induce victims to answer calls that appeared to have come from a relatively local looking number.

<u>Call Details</u>

10.      On January 7, 2015 at 12:00 PM Defendants called Mr. Sapan using the CID 424-218-1149.

11.      Mr. Sapan answered this call but there was no one on the line so he hung up.

12.      On January 8, 2015 at 2:41PM; Defendants again called Mr. Sapan using the CID 424-218-1149.

13.      Once again Mr. Sapan answered this call but there was no one on the line so he hung up.

14.      Mr. Sapan alleges on information and belief that these calls were prerecorded telesolicitation calls that used the exact same sales recording as the next call discussed below which used the same CID number and had he remained on the line he would have heard the recording.

15.       On January 13, 2015 at 12:13 PM the Defendants called Mr. Sapan

again using the CID 424-218-1149.

16.     Mr. Sapan answered and Defendants' automated calling system played a pre-recorded message.

17.     Defendants prerecorded pitch was an "interactive voice response system" where the recording makes a short sales pitch and then the victim is prompted to 'press 1' if interested.

18.     The initial pitch for mortgage consultancy services did not state the calling company's name or phone number as required by law, nor was it introduced by a live person asking permission to play the recording as required by law.  See, 47 U.S.C. 227(d), Cal. Civ. Code. § 1770 (a) (22) (A).

19.     Since the message illegally concealed the identity of the caller, Mr. Sapan pressed '1' to figure out who was bothering him and the call was transferred to a live person who self-identified as "Randy of American Capital" who continued the sales pitch.

20.     Mr. Sapan listened politely then asked for the company's website address in order to further pin down the culprit, and "Randy" said it was www.ifixcredit.org.

21.     Having the information he needed, Mr. Sapan then hung up.

22.     Defendants called Mr. Sapan again on January 13, 2015 at 12:16 PM using the CID 424-253-9395, but he did not answer and they left no message.

23.     Due to the fact that is shares the same area code, 424, as the call from Defendants which he previously hung up, and the call came within one to two minutes after he hung up on the previous call, Mr. Sapan alleges on information and belief that this call was yet another prerecorded call placed by the Defendants to sell their consultancy services.

24.     On March 03, 2015 at 12:05 PM the Defendants called Mr. Sapan from CID 424-221-5551.

25.     Mr. Sapan answered and Defendants' automated calling system played the exact same pre-recorded voiced message as in the previous call he answered which attempted to sell Defendants' consultancy services.

26.     Mr. Sapan pressed '1' again to determine if this was the same junk caller, however after several rings no one answered the call and so Mr. Sapan hung up.

27.     Due to the fact that is shares the same area code, 424, as the previous call from Defendants and used the exact same prerecorded sales message, Mr. Sapan alleges on information and belief that this call was yet another prerecorded call placed by the Defendants to sell their consultancy services.

28.     Within minutes after hanging up on the previous call on March 3, 2015, Defendants called Mr. Sapan from CID 424-281-3979 at about 12:08 PM.

29.     Mr. Sapan answered this call and a person who said his name was

"King from American Capital" confusingly claimed he was calling Mr. Sapan to see if Mr. Sapan was calling them.

30.     Mr. Sapan said that in fact they had just called him and he firm stated that he would call them if he had any interest in their services and then hung up.

31.     Finally, on March 12, 2015 at 11:17 AM Defendants called Mr. Sapan from CID 424-281-3979.

32.     Mr. Sapan answered and a person in a live voice whose name Mr. Sapan did not hear stated he was following up with Mr. Sapan on the Defendants' services.

33.     Mr. Sapan said again that he was not interested and hung up.

34.     During each of the three live calls Mr. Sapan noticed a long delay between when he picked up the phone and the live person began talking, which is common hallmark of predictive automatic telephone dialing systems which try to increase the number of calls a junk telemarketer can make by eliminating the delay between ending one conversation and coming into the next.

35.     Mr. Sapan alleges on information and belief that Defendants used an automatic telephone dialing system of the predictive dialer sort during each of the three live calls they made to him.

36.     None of the prerecorded calls to Mr. Sapan which he answered were introduced by a live natural person as required by California law.

37.    Mr. Sapan alleges on information and belief that for each of the prerecorded calls to him that he did not answer or wherein some glitch interfered with the recording that the recording would have been the exact same as the recording when he did answer and they were not introduced by a live natural person as required by the California Consumer Legal Remedies Act.

38.    And none of the recordings complained of identify the specific company or person who was calling to offer consultancy services as required by both federal and California law.

## Liability of AMERICAN CAPTIAL

39.    During the third call that Mr. Sapan received from Defendants on January 13, 2015 at 12:13 PM , Mr. Sapan was given the website www.ifixcredit.org.

40.    Mr. Sapan usually does not go directly to websites given by junk telemarketers who sell services like mortgage loan consultations, because they are often associated with scams and the websites often have viruses and intrusive marketing tool bots.

41.    A Google search of "www.ifixcredit.org" quickly showed a link to a State of Connecticut Department of Banking Cease and Desist Order against American Capital Revitalization Group a/k/a ifixcredit.org.  [emphasis added].  See, http://www.ct.gov/dob/cwp/view.asp?a=2246&q=582476.

42.    And other results from the same search confirm that the website was used by Defendant AMERICAN CAPITAL.  See, e.g., https://getoutofdebt.org/99474/anyone-know-ryan-zimmerman-now, https://www.trustlink.org/Reviews/American-Capital-Revitalization-Group-207052765.

43.    Additionally, during the fifth call Mr. Sapan received from Defendants on March 3, 2015 at 12:08 PM, the person who Mr. Sapan spoke with, "King", specifically stated he was calling from "American Capital", a shortened version of AMERICAN CAPITAL's full corporate name.

44.    AMERICAN CAPITAL's Yelp page also shows that they are in the business of providing mortgage consultancy and debt relief consultancy services, the same services that were pitched to Mr. Sapan during the calls he answered. See, https://www.yelp.com/biz/american-capital-revitalization-group-beverly-hills.

### Liability of DANA FABIAN

45.    Defendant FABIAN was, and at all times herein mentioned was an officer and/or management official for AMERICAN CAPITAL.

46.    In its official corporate records filed with the California Secretary of State, AMERICAN CAPITAL's address is listed as 11847 Wagner Street, Culver City California 90230.

Complaint

47.     Public records maintained by the Los Angeles County tax assessment office show that the home at this address is owned by Defendant Dana Fabian.

48.     A street view Google maps search of this address shows that it is a modest single family residence, not a multi-tenant larger structure where anyone other than the home owner could operate a business.

49.     A Google search of AMERIAN CAPITAL's full corporate name quickly brings up a number of corporate profile website stating that FABIAN is the sole managing member of the LLC and contact person for the company.  See, http://www.buzzfile.com/business/American-Capital-Revitalization-Group-LLC-310-857-8861,  and  http://www.wysk.com/index/california/culver-city/8ncqg8x/american-capital-revitalization-group-llc/officers.

50.     Plaintiff has searched public records such as federal employer Identification Number registries and can find no record that AMERIAN CAPITAL ever employed anyone in a managerial capacity, nor any evidence that anyone other than Dana Fabian ever held any managerial role at the company.

51.     Plaintiff alleges on information and belief that Defendant FABIAN made the violative calls, ordered them made, knew the calls described above were being made and did nothing, or was willfully and recklessly ignorant of the fact his company was making the calls described above.

Complaint

## Actual Harm & Willful and Knowing Conduct

52.    Mr. Sapan has been harmed by the junk calls complained of herein by the direct waste of his time during the calls themselves, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

53.    Mr. Sapan has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendants must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

54.    During each of Defendants' calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendants.

55.    As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 1% of his monthly phone bills in January and March 2015 since Defendants calls constituted 1% or more of the total

Complaint

calls to his phone during the heights of their junk calling campaign in those two months.

56.     Plaintiff alleges on information and belief that Defendants made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

57.     Plaintiff alleges on information and belief that Defendants made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## FIRST CAUSE OF ACTION
[TCPA Violation – Prerecorded and Autodialed Calls – For All 7 Calls]

58.     Plaintiff  realleges all paragraphs above and incorporates them herein by reference.

59.     Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

60.     Subdivision (b) (1) (A) (iii) of Section 227 of Title 47 of the United States Code makes it unlawful for any person to "Make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice... to any telephone number assigned to a paging service, cellular telephone

Complaint

service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."

61.    Defendants have been calling Plaintiff's number assigned to a cellular telephone service using an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiff's express permission on at least 7 occasions during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are only the calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's number assigned to a cellular telephone service.  These calls were not made for any emergency purpose, nor were these calls exempt under section 64.1200 of title 47 of the Code of Federal Regulations.

62.    Subdivision (b)(3) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations of 47 U.S.C. §227 (b) (1) (A) (iii). Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

/ / /

/ / /

## SECOND CAUSE OF ACTION

[TCPA Violation – Do Not Call List – For All 7 Calls]

63.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

64.   Plaintiff is bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

65.   Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations".

66.   At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

67.   Defendants have called Plaintiff's residential telephone line for solicitation purposes during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658.  These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line.  These calls were not made in error, nor did

Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff.  37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

68.   Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the national do-not-call registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief, or Plaintiff may recover $500.00 for each violation, or both.  If the court finds that defendants' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

## THIRD CAUSE OF ACTION
[Violation(s) of California Civil Code § 1770 (a) (22) (A) –
For All 4 Prerecorded Telesolicitation Calls]

69.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

70.   California Civil Code § 1770 (a) (22) (A) requires that all recorded messages disseminated within the state be introduced by a live, natural voice giving the name of the entity calling, the name of the entity being represented, an address or phone number for that entity, and asking permission to play the recording.  Defendant's illegal prerecorded telemarketing calls to Plaintiff failed to comply with this requirement.

Complaint

71.   As a proximate result of defendants' violation of Civil Code section 1770, plaintiff has suffered and continues to suffer damages in an amount not yet ascertained, to be proven at trial.

72.   Civil Code section 1780 (a) (2) provides for an injunction against future conduct in violation of Civil Code section 1770.

73.   Civil Code section 1780 (a) (4) provides for an award of punitive damages for violations of Civil Code section 1770.

74.   Civil Code section 1780 (d) provides for an award of attorneys fees for plaintiffs harmed by California Civil Code §1770 (a) (22) (A) violations.

75.   Civil Code section 1782 requires that, thirty days or more prior to the commencement of an action for damages pursuant to this title, Plaintiff give notice in writing via certified mail with return receipt requested of his claims under Civil Code section 1770.  Plaintiff did so by having his attorneys send a written cease and desist and demand letter via certified mail with return receipt requested to Defendants at their principal places of business well over 30 days prior to the filing of the instant action.

## FOURTH CAUSE OF ACTION
[Trespass to Chattel – For All 7 Calls]

76.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

77.   The conduct by defendants complained of herein, namely illegally calling Plaintiff's phone, constitutes an electronic trespass to chattel.

78.   At no time did Plaintiff consent to this trespass.

79.   As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 1% of his monthly phone bills in January and March 2015 since Defendants calls constituted 1% or more of the total calls to his phone.

80.   In making the illegal calls described above, defendants were guilty of oppression and malice, in that defendants made said calls with the intent to vex, injure, or annoy Plaintiff or with a willful and conscious disregard of Plaintiff's rights. Plaintiff therefore seeks an award of punitive damages.

## FIFTH CAUSE OF ACTION
[Engaging in Unfair Business Practices – For All 7 Calls]

81.   Plaintiff realleges all paragraphs above and incorporates them herein by reference.

82.   Because these telephone calls violate federal statutes, they are unlawful business practices within the meaning of section 17200 of the Business and Professions Code.

83.   As a proximate result of these intrusions, Plaintiff suffered damage in an amount according to proof, but no less than 1% of his monthly phone bills in

Complaint

January and March 2015 since Defendants calls constituted 1% or more of the total calls to his phone.

84. Section 17203 of the Business and Professions Code entitles Plaintiff to an injunction enjoining defendants from engaging in unfair or unlawful business practices.

WHEREFORE Plaintiff prays for judgment against defendants, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. §227;

2. For an award of $1,500.00 for each such violation found to have been willful;

On the SECOND CAUSE OF ACTION:

3. For an award of $500.00 for each violation of 47 C.F.R. §64.1200 (c) (2);

4. For an award of $1,500.00 for each such violation found to have been willful;

On the THIRD CAUSE OF ACTION:

5. For compensatory damages according to proof;

6. For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in activity in violation of California Civil Code §1770 (a) (22) (A);

7. For punitive damages;

8. For attorney's fees;

/ / /

/ / /

Complaint

On the FOURTH CAUSE OF ACTION:

    9.    For compensatory damages according to proof;

    10.  For punitive damages;

On the FIFTH CAUSE OF ACTION:

    11.  For preliminary and permanent injunctions, enjoining Defendants, and each of them, from engaging in unfair or unlawful business practices pursuant to section 17203 of the Business and Professions Code;

On ALL CAUSES OF ACTION:

    12.  For attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

    13.  For costs of suit herein incurred; and

    14.  For such further relief as the Court deems proper.


DATED: November 28, 2017        **PRATO & REICHMAN, APC**


                       /s/Christopher J. Reichman, Esq.
                       By: Christopher J. Reichman, Esq.
                       **Prato & Reichman, APC**
                       Attorneys for Plaintiff
                       PAUL SAPAN

Complaint